IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAILY CALLER NEWS FOUNDATION ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 18-1833 |
| ) | |
| FEDERAL BUREAU OF INVESTIGATION ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR *OPEN AMERICA* STAY**

Plaintiff Daily Caller News Foundation ("DCNF") respectfully submits this opposition to Defendant Federal Bureau of Investigation's ("FBI" or "Bureau") motion for a stay pursuant to 5 U.S.C. § 552(a)(6)(C) and *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976). For the reasons set forth below, Defendant's motion is not justified and must be denied.

**INTRODUCTION**

> A popular government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or, perhaps, both. Knowledge will forever govern ignorance: And a people who mean to be their own Governors, must arm themselves with the power which knowledge gives.
>
> *James Madison* (1822)[1]

This case is about the obligation of transparency that the U.S. government owes its citizens—specifically, statutory obligations under the Freedom of Information Act ("FOIA"), 5

---

[1] U.S. Dep't of Justice, *Celebrating James Madison and the Freedom of Information Act*, FOIA Post, Mar. 13, 2008, http://bit.ly/2RaBXko (citing Letter from James Madison to W.T. Barry, August 4, 1822, in The Writings of James Madison (Gaillard Hunt ed.)).

USC § 552 *et seq.*—and the government's attempt to evade that obligation.  The DCNF, a non-profit news service, filed a FOIA request for records about a serious and newsworthy issue: Daniel Richman's employment as a Special Government Employee at the FBI.  Mr. Richman worked for no salary but was more than a mere volunteer.[2]  Former FBI Director James Comey notoriously leaked memos he wrote about President Donald Trump to Mr. Richman,[3] and Mr. Richman currently serves as Mr. Comey's lawyer.[4]

The FBI seeks a stay of more than two years under the standards of *Open America*, arguing that the agency has been hit with an "unprecedented spike" in FOIA requests.  Def.'s Mot. for *Open America* Stay at 2 [hereinafter Def.'s Mot.], ECF No. 14.  Yet an examination of the FBI's publicly available data shows precisely the opposite: the rise in the number of requests over the last several years reflects what the FBI could have and should have expected at the dawn of a new administration and does not represent a significant increase in volume over what that the FBI handled during the Obama Administration.  Furthermore, the FBI's efforts to clear its backlog of outstanding FOIA requests have fallen short.  To allow Defendant to evade its obligation to respond to the DCNF's FOIA request beyond the next presidential election will create a precedent that one of the most important federal agencies in the United States, its chief law enforcement agency, can evade transparency with impunity.

This Court also must not give credence to the FBI's fantastic contention that Mr. Richman's status as a Special Government Employee and his relationship with Director Comey is not

---

[2] Diana Stancy Correll, *Professor who leaked Comey memos to media was 'special government employee' for FBI*, Wash. Exam'r, Apr. 24, 2018, https://washex.am/2BpkmLO.

[3] *Comey admits leaking memo to Columbia law professor*, Fox5ny.com (June 8, 2017), http://bit.ly/2SRsn3a.

[4] Scott Neuman, *Comey Vows To Resist Subpoena From House Republicans For Closed-Door Testimony*, NPR.org, Nov. 23, 2018, https://n.pr/2A2yScH.

newsworthy and that, therefore, there would be no harm in postponing its response to the FOIA request at issue until after the next presidential election in 2020.  The FBI's position flies in the face of the evidence, which, as set forth below, shows that there has been massive, wide-spread media coverage not only of Mr. Richman's relationship to Mr. Comey, but also his activities while he worked at the FBI.  To date, the specific nature of those activities—including how and why he was employed as a Special Government Employee in the first place—remain hidden.[5]  By attempting to erroneously re-define this FOIA request to relate only to former Secretary of State Hillary Clinton, the FBI seeks to dilute the critical and newsworthy nature of the DCNF's records request.

## ARGUMENT

**I.     The FBI has not met the standard for an *Open America* stay.**

In both 2013 and 2014, courts in this district found that the FBI could not satisfy the exceptional circumstances test applicable to an *Open America* stay and had fallen short in efforts to reduce the backlog of outstanding FOIA requests. *See Clemente v. Fed. Bureau of Investigation*, 71 F. Supp. 3d 262 (D.D.C. 2014); *Elec. Privacy Info. Ctr. v. Fed. Bureau of Investigation*, 933 F. Supp. 2d 42 (D.D.C. 2013).  Not much has changed since then.  The "recent surge" in FOIA requests the FBI alleges to have experienced represents the normal and expected increase following the election and inauguration of a new president and the start of a new administration. In fact, as demonstrated below, the FBI has received fewer FOIA requests during the first two years of the Trump election and Administration than it did under the first two years of the Obama election and Administration.  Moreover, the Bureau's backlog of FOIA requests has only gotten worse, demonstrating that nothing has changed since this Court held that it "cannot find that [FBI]

---

[5] Richard Pollock, *Daily Caller News Foundation Sues to Obtain Information on Comey's Leaker*, DCNF, Aug. 6, 2018, http://bit.ly/2S895Xi.

3

efforts have led to 'reasonable progress' in reducing the agency's backlog." *Elec. Privacy Info. Ctr.*, 933 F. Supp. 2d at 49; *see also Clemente*, 71 F. Supp. 3d at 268 ("This Court agrees [with Judge Kollar-Kotelly] and finds that the FBI has not shown exceptional circumstances or sufficient progress in reducing its backlog[.]").

### A.     The FBI cannot show exceptional circumstances.

To obtain a stay under *Open America*, the FBI must show is that it is facing "exceptional circumstances" and has exercised "due diligence" in processing its requests. *Elec. Privacy Info. Ctr.*, 933 F. Supp. 2d at 46 (citing 5 U.S.C. § 552(a)(6)(C)(i)). The FBI is "entitled to additional time" when the agency:

> is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests.

*Id*. (citing *Open America*, 547 F.2d at 616). Congress amended the FOIA to make clear the parameters surrounding this agency privilege:

> [T]he term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.
>
> Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) . . . after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

*Id*. (citing 5 U.S.C. § 552(a)(6)(C)(ii)–(iii)). Factors to consider in assessing an *Open America* stay include "'an agency's efforts to reduce the number of pending requests, the amount of classified material, [and] the size and complexity of other requests processed by the agency.'" *Id*. (citing *Elec. Frontier Found. v. Dep't of Justice*, 517 F. Supp. 2d 111, 117 (D.D.C. 2007)). However, "'routine, predictable agency backlogs for FOIA requests do not constitute exceptional

4

circumstances.'" *Id*. (citing H.R. Rep. 104–795 at 24 (1996)); *see also id.* ("If . . . the agency can show no more than a 'predictable agency workload of requests,' exceptional circumstances will not lie 'unless the agency [further] demonstrates reasonable progress in reducing its backlog of pending requests" (citing 5 U.S.C. § 552 (a)(6)(C)(ii))).

To support its motion for stay, the FBI relies on a lengthy declaration that, conveniently for the agency, limits its discussion to only those requests received by the FBI from FY 2014 to the present. Decl. David M. Hardy ¶ 18, ECF No. 14-1. For the purpose of its declaration, the FBI also lumps together both FOIA requests and Privacy Act requests. Fortunately, there is publicly available information that places the data provided by Defendant's declaration in its wider context.[6]

As summarized in the table below, in the presidential election year of 2008, the FBI received 17,241 FOIA requests, the highest number the Bureau has received in the past decade and 4,732 more than it received the previous year. By contrast, in the presidential election year of 2016, the FBI received 15,202 requests. That number was 2,039 fewer than 2008 and only 2,271 more than the previous year. In 2009, the first year of the Obama Administration, the FBI received 15,664 FOIA requests, which was over 600 more than the 15,042 requests received in 2017, the first year of the Trump Administration. In the intervening years, 2010–2015, the FBI received

---

[6] *See, e.g.*, United States Dep't of Justice Annual FOIA Report, Fiscal Year 2017, *available at* http://bit.ly/2QFVDxh. Earlier annual FOIA reports published by the Department of Justice are available at http://bit.ly/2PM3cxa. The data provided in these annual FOIA reports excludes Privacy Act requests, but, absent evidence to the contrary, there is little reason to doubt that the yearly increase or decrease in FOIA requests are not impacted by the number of Privacy Act requests. Moreover, the focus of the FBI's declaration relates to the processing of FOIA requests, not Privacy Act requests, and this case involves only a single FOIA request. Plaintiff therefore relies on the Department of Justice annual FOIA reports as the best publicly available data to show this Court that the increases and decreases in FOIA requests over time have been and continue to be both predictable and manageable.

12,653 annual requests on average. Given this context, the modest increase of FOIA requests at the dawn of the Trump Administration was not only predictable but less than the FBI could have expected. Indeed, the burden on the FBI has been substantially less than it was at the outset of the Obama administration.

| Year | Backlog* | Number of Requests | Processed Requests |
|------|----------|--------------------|--------------------|
| 2005 |          | 10,934             | 11,155             |
| 2006 |          | 15,370             | 15,403             |
| 2007 |          | 12,509             | 12,309             |
| 2008 | 1,001    | 17,241             | 17,717             |
| 2009 | 1,758    | 15,664             | 15,195             |
| 2010 | 1,602    | 14,957             | 14,665             |
| 2011 | 938      | 11,089             | 11,413             |
| 2012 | 1,865    | 12,783             | 11,882             |
| 2013 | 2,696    | 12,463             | 11,579             |
| 2014 | 2,656    | 11,696             | 12,705             |
| 2015 | 2,614    | 12,931             | 13,405             |
| 2016 | 4,336    | 15,202             | 13,758             |
| 2017 | 4,484    | 15,042             | 15,611             |

Decl. of Eric R. Bolinder ¶ 3. *Plaintiff could not locate backlog numbers for 2005–2007.

The FBI claims that, "[i]nstead of experiencing the peaks and valleys of incoming requests within a relatively predictable range of annual requests, recent figures demonstrate the FBI's annual volume of requests has broken out to new levels not sustainable with existent resources and technology." Hardy Decl. ¶ 21. But that contention is belied by the fact that the FBI processed an average of 15,859 requests in 2008–2010, which exceeds the total number of requests received in each of the years since then. Indeed, historical data over the last thirteen years shows that the agency processed roughly the same number of requests as it received, as the following graph of the data demonstrates. And in those years where it received more requests than it processed, the FBI worked to make up the difference in the following years (for example, compare years 2012–13 with years 2014–15).

6



Bolinder Decl. ¶ 4.

The evidence is therefore clear: the recent increase in FOIA requests to the FBI is not any kind of "spike."  It is an expected "bump" at the onset of a new administration and is significantly smaller than the bump from the last time a new president began his first term in office.

In an attempt to counter the above data, the FBI claims that "[o]ver the past several years, requests have grown significantly more complex."  Hardy Decl. ¶ 13.  But the agency does not provide a date range for this so-called increase in complexity or any evidence, beyond the bald statement, to support the contention.  Indeed, the Hardy Declaration tries to bolster the alleged burden of the new "complexity" of FOIA requests by simply listing the usual requirements for the processing of FOIA requests that all agencies face: reviewing each document for redactions and consulting with internal stakeholders. *Id*. ¶ 14.  These activities are neither exceptional nor unique.  They are the basic elements of processing any FOIA request.  As this Court previously held, "'there is simply insufficient evidence in the record to draw any concrete and meaningful conclusions as

7

to the composition of the [FBI's] workload today in comparison to years past, at least in terms of complexity.'" *Elec. Privacy Info. Ctr.*, 933 F. Supp. 2d at 48 (citing *Buc v. Food & Drug Admin.*, 762 F. Supp. 2d 62, 68 (D.D.C. 2011)); *see also Clemente*, 71 F. Supp. 3d at 267.

The FBI further claims that it is overly burdened by the need for greater "inter-agency information sharing" that arose in the wake of the terrorist attacks of September 11, 2001. Hardy Decl. ¶ 15. But that tragic event occurred more than seventeen years ago, and the agency has had more than enough time to implement new procedures and personnel to account for any burden occasioned by the need for greater sharing of information between agencies. The FBI must long ago have adapted to the policy and technology reforms that followed 9/11 and can no longer plead that excuse to avoid transparency almost two decades later. Moreover, the FBI has made no claim that the request at issue here implicates any national security interests or would require extra-sensitive review or inter-agency consultation.

Finally, the FBI claims that advances in technology have made FOIA requests more difficult to process, not less. *Id.* ¶¶ 16–17. Again, the Bureau provides no date range for this increased difficulty or any supporting evidence to demonstrate that the changes represent anything other than the natural evolution—which has been going on for decades and is thus known, expected and predictable—from paper to digital recordkeeping. Critically, the FBI provides no explanation for why it could handle the higher volume of requests in the Obama years, but now finds itself unable to do so in the early stages of the Trump Administration.

The FBI's position is further undercut by its staffing structure.[7] In 2008, when the FBI received 17,241 requests and processed 17,717, it employed 183 full-time FOIA employees and 4 equivalent full-time FOIA employees, for a total of 187. In 2017, when the FBI received 15,042

---

[7] *See infra* p. 9 (table containing staffing data).

requests and processed 15,611, it had 245 full-time FOIA employees and 7 equivalent full-time FOIA employees, for a total of 252. From 2010 to 2013, the FBI employed an average of approximately 282 total full-time or equivalent FOIA employees. In the four years since (2014–2017), just as the country was entering a new election cycle, this number dropped to approximately 239 total full-time or equivalent FOIA employees. With the new election cycle looming, it appears the FBI has decided to cut the number of employees, rather than staff up. Regardless, it was able to handle the higher number of requests from the initial Obama years despite fielding a smaller work force than it does today. The evidence therefore demonstrates that the FBI has sufficient personnel to process the FOIA request at issue now rather than waiting another two years.

| Fiscal Year | Full-Time FOIA Employees | Equivalent Full-Time FOIA Employees | Sum Full-Time FOIA Employees |
|---|---|---|---|
| 2006 | 232 | 19* | 251 |
| 2007 | 203 | 10* | 213 |
| 2008 | 183 | 4 | 187 |
| 2009 | 202 | 4 | 206 |
| 2010 | 270 | 9 | 279 |
| 2011 | 282 | 9 | 291 |
| 2012 | 282 | 9 | 291 |
| 2013 | 261 | 9 | 270 |
| 2014 | 225 | 8 | 233 |
| 2015 | 224 | 8 | 232 |
| 2016 | 235 | 7 | 242 |
| 2017 | 245 | 7 | 252 |

Bolinder Decl. ¶ 3. *For 2006 and 2007, the DOJ data defines this category as "Number of Personnel With Part Time or Occasional FOIA Duties (In Total Workyears)."



### B. The FBI's FOIA litigation load does not support its motion.

The FBI cites its current FOIA litigation load as justification for its failure to process FOIA requests on a timely basis. Def.'s Mot. at 6–7; Hardy Decl. ¶¶ 18–21. As with the rest of its data, however, the FBI only provides statistics from recent history (2014–present) on the number of FOIA lawsuits it is involved in. The FBI provides this Court with much detail on the *current* processing demands of FOIA litigation but provides no comparison to how this factors in over time. As a previous court in this district found, "this 'anecdotal evidence' does not demonstrate anything about the FBI's 'workload as it has developed over time.'" *Clemente*, 71 F. Supp. 3d at 267; *see also Elec. Privacy Info. Ctr.*, 933 F. Supp. 2d at 48 ("[W]ithout more elaboration as to the FBI's litigation-related processing obligations over specific periods of time, the Court cannot determine what, if any, impact these obligations should have on the Court's analysis of the FBI's FOIA workload.").

Moreover, the data that the FBI does provide shows that the number of cases in litigation has increased at a steady—and thus completely predictable—rate over the last five years. Hardy

10

Decl. ¶¶ 18–19; *see also Clemente*, 71 F. Supp. 3d at 267 ("[T]his Court cannot conclude that obligations resulting from various lawsuits are more than the predictable workload of the agency."). It is also likely that the primary reason for the increase in FOIA cases over the last few years may not be because of a newly-litigious crowd of requesters but instead the result of the FBI's failure to devote sufficient resources to meet its transparency obligations.

### C. The FBI has failed to address its backlog of FOIA requests.

In 2013 and 2014, two courts in this district found that the FBI had not done enough to control or reduce its backlog of FOIA requests and thus denied its motion for an *Open America* stay. *Clemente*, 71 F. Supp. 3d at 268; *Elec. Info. Privacy Ctr.*, 933 F. Supp. 2d at 49. Nothing favoring the FBI has changed in the interim; rather, the backlog has instead increased significantly. In 2013, the backlog was 2,696 requests. In 2014, it was virtually the same: 2,656. As of 2017, it had grown to 4,484.[8]



---

[8] *Supra* p. 6 (table containing backlog data).

Tellingly, the only backlog reduction noted in the FBI's declaration is that, through negotiation, it reduced the number of pages to be processed. Hardy Decl. ¶ 45. But the FBI pointed to no other progress in reducing its backlog, including any reduction in the overall number of requests, and instead concentrated on future plans and staffing concerns. *Id.* ¶¶ 22–45. Until the FBI shows *actual results* in reducing its backlog, rather than the steady increase that has occurred over the last six years, the agency should not be rewarded with an *Open America* stay.



As the above chart shows, the FBI absorbed the significant increase in FOIA requests in 2008–2010 without carrying a significant backlog. By contrast, faced with the steady increase in the number of FOIA requests over the last six years, the FBI has failed to respond, allowing its backlog to grow. The requirements for an *Open America* stay are not met and Defendant's motion accordingly should be denied.

Finally, Plaintiff notes that a recent decision by a court in this district, which granted an *Open America* stay—*Democracy Forward Foundation v. Department of Justice,* No. 18-00734,

2018 WL 6434769 (D.D.C. Dec. 7, 2018)—is distinguishable from the instant case and helps clarify the legal principles at issue. In that case, the Department of Justice Office of Information Policy ("DOJ OIP") provided statistics dating back to 2008 (as opposed to only FY 2014) to support its contention for an uptick in requests. *Id*. at *4. Specifically, the DOJ OIP demonstrated that the number of FOIA requests it received increased at a "steady pace" from "904 in FY 2008 to 1803 in FY 2016" but then showed a substantial, unprecedented spike from 2016–2019 from 1,803 to 2,818, a nearly 34% increase.[9] That put DOJ OIP at historic highs compared to its ten-year history and demonstrated that "the increases seen during the last election/transition cycle far exceed increases seen in such past cycles." *Id*. All of that contrasts with the evidence here, which shows a linear, predictable, and manageable increase in requests year after year and a significant reduction in requests in the election/transition cycle of 2016–17 as compared to 2008–09.

### D. Plaintiff made reasonable efforts to narrow the request.

As explained in the Hardy Declaration attached to Defendant's motion and the Bolinder Declaration attached herewith, the FBI contacted Plaintiff on September 17, 2018—after the commencement of this FOIA lawsuit—to explain that it had located approximately 11,000 pages of potentially responsive records and to raise the possibility of narrowing the scope of the request. Hardy Decl. ¶¶ 4, 10, Ex. C; Bolinder Decl. ¶ 6, Ex. 2. On October 17, 2018, counsel for the FBI contacted counsel for the DCNF to explain that the FBI "may need to seek an Open America stay" unless Plaintiff could narrow the request. Bolinder Decl. ¶ 6, Ex. 2. The DCNF, through counsel, responded on October 24, 2018 with an offer to narrow the scope of the request and, after further discussion and clarification, the FBI informed the DCNF that the narrowing of the request had

---

[9] Here, there was only around a 15% increase from 2016–2017, which was perfectly predictable given historical trends.

13

reduced the number of potentially responsive pages of records to 7,000. Bolinder Decl. ¶¶ 6–7, Exs. 2, 3; Hardy Decl. ¶ 4.

The FBI mischaracterizes these efforts to narrow the request as "slight." Hardy Decl. ¶ 49 n.20. In fact, whereas the original request returned 11,000 pages of potentially responsive records, the DCNF's offer to narrow the request reduced that number to 7,000, a more than 36% reduction in the total number of responsive pages of records. This good faith offer to narrow the scope of the request, and the significant reduction in potentially responsive records achieved, weigh in Plaintiff's favor, *see* 5 U.S.C. § 552(6)(B)(II), and counsels against the grant of the stay.

## II.     The FOIA request at issue concerns critical and newsworthy subject matter.

If this Court finds that the information requested by the DCNF is important and worthy of expedition, the need for the above analysis is rendered moot. The FBI's FOIA regulations provide for expedited processing of a request when it involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). As the FBI acknowledges, the DCNF requested expedited processing under this standard. Hardy Decl. ¶ 49. This Court should deny Defendant's stay motion and grant this critical request.

### A.     There is widespread and exceptional media interest in the subject matter of the request at issue.

It is undeniable that there is widespread and exceptional media interest in the topic of the FOIA request at issue in this case, especially those records that will shine a light on the relationship between Mr. Richman, the FBI, and Director Comey. The FBI attempts to evade this undeniable fact by re-defining the request to be about Hillary Clinton and then noting that no content about her is found in the search results—thus defeating any argument for expedition or priority. *See*

14

Hardy Decl. ¶ 53 ("Plaintiff has failed to articulate a compelling need to process its request ahead of [other FOIPA requests]").

But that is not what the request is about at all. The request seeks "all records, documents, and communications pertaining to Daniel Richman, a Special Government Employee hired by former FBI Director James Comey." Compl. ¶ 8, ECF No. 1. And it specified:

> This request includes all communications between the bureau and Mr. Richman concerning his SGE work assignments, all intra-bureau communications about Mr. Richman and his assignments and activities, as well as all work product delivered to Director Comey or to others within the bureau.
>
> This additionally includes all of Mr. Richman's work product whose messages were conveyed to the public in FBI comments, speeches and printed material.

*Id.* ¶¶ 9–10. Although the DCNF cited the Hillary Clinton investigation as a reason to expedite, it also included several other reasons that all remain pertinent here. Critically, in the "Expedite Reason" of the FBI's FOIA request form, Plaintiff explained:

> In his testimony before the Senate Intelligence Committee on June 8, 2017, Director Comey disclosed that he gave his friend, Columbia University law professor Daniel Richman, a copy of his contemporary notes on a meeting with President Trump. Director Comey instructed Prof. Richman to leak this information to the New York Times, which he did. It was recently disclosed that some of Director Comey's contemporaneous notes included classified information. At no time during his testimony before the Senate committee did Director Comey disclose that Prof. Richman was a Special Government Employee. He had ample opportunity to do so, but misled the committee. The public also does not know if Prof. Richman leaked classified information to any other news organizations on behalf of Director Comey.
>
> Prof. Richman's unusual hiring as an SGE and disclosure of his assignments and work products are central to a public understanding of the processes underway at the bureau in its investigation of Hillary Clinton's email server.
>
> This issue touches on the trustworthiness, integrity and honesty of Director Comey, a key matter of public importance that can lead to a lack of public trust in our government officials. In light of these facts, we seek an expedited processing of this FOIA request.

15

*Id.* Ex. 1. The DCNF's request, in other words, does not relate primarily to Hillary Clinton but to Mr. Richman's status as an Special Government Employee, Director Comey's truthfulness before Congress, and the public interest in the overall trust in government officials. That Mr. Richman appears to have played some role in the Clinton investigation necessarily plays a part in the request, but the request goes beyond that by seeking records relating to Mr. Richman's role at the FBI and his working relationship with Mr. Comey, information that remains to this day murky and little known.

As of the week of this filing, Director Comey is testifying in closed session on Capitol Hill, an event that has received intense media attention.[10] Director Comey is still represented, it appears, by the subject of this FOIA request: former FBI Special Government Employee Daniel Richman. There has long been extraordinary news interest in the relationship between these two men, as well as the status of Mr. Richman at the FBI. The DCNF, and its affiliate, the Daily Caller, have written exhaustively about the two men, authoring at least seventeen articles that mention both of them since mid-2017.[11] Numerous other media outlets have covered the story in great detail.[12] A

---

[10] *E.g.,* Karoun Demirjian, *Comey lambastes GOP over Trump's continued attacks on FBI: 'Stand up and speak the truth'*, Wash. Post, Dec. 17, 2018, https://wapo.st/2rGb8q0; Greg Wilson, *Comey, dubbed 'amnesiac with incredible hubris,' back on Hill for new round of grilling*, FoxNews (Dec. 17, 2018), https://fxn.ws/2zXjzlt; Jeremy Herb & Manu Raju, *Comey slams Trump, 'shameful' House Republicans after 2nd Capitol Hill meeting*, CNN, Dec. 17, 2018, https://cnn.it/2LlcsHT.

[11] *See, e.g.*, Chuck Ross, *Comey Sues to Block Subpoena for House Deposition*, DCNF, Nov. 29, 2018, http://bit.ly/2rGzWy9; Chuck Ross, *GOP Chairmen Demand Comey Memos 'Immediately'*, DCNF, Apr. 13, 2018, http://bit.ly/2QXMTSy; Chuck Ross, *Grassley Says Comey Appears to have Leaked Classified Memo to Friend*, Daily Caller, Jan. 3, 2018, http://bit.ly/2URm95d.[11] Links to the rest of the articles may be found in Exhibit 1 to the Bolinder Declaration.

[12] *See, e.g.*, Diana Stacey Correll, *Professor who leaked Comey memos to media was 'special government employee' for FBI*, Wash. Exam'r, Apr. 24, 2018, https://washex.am/2BpkmLO; Erik Ortiz & Dafna Linzer, *Who is Daniel Richman, the Columbia Professor Who Leaked Comey's Trump Memo?*, NBC News, June 8, 2017, https://nbcnews.to/2SVEc8K; Alex Ward, *Meet Daniel Richman, the Columbia professor who helped Comey leak his memos*, Vox.com, June 8, 2017, http://bit.ly/2BmvxVA; Samantha Schmidt, *The frantic online search for Comey's professor friend at Columbia Law School*, Wash. Post, June 9, 2017, https://wapo.st/2R1Ni6p; Riley Beggin, *Who*

Google search of "Comey Richman" returns 109,000 results. Furthermore, a Google search of "Daniel Richman Special Government Employee" returns 176,000 results. Google news searches of the same return 3,680 and 1,650 results, respectively.[13]

There can be no doubt, therefore, that the request at issue in this case concerns "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). The request deserves expedited processing. At the very least, further delay by the invocation of a stay under *Open America* is not warranted and must be denied.

### B. The sufficiency of the FBI's search scope is in question.

The FBI's supporting declaration claims that Mr. Richman worked on the FBI's "Going Dark" program and that responsive records do "not show any communications from Daniel Richman to Director Comey, or any bureau employee, pertaining to investigative matters associated with the Hillary Clinton email server investigation." Hardy Decl. ¶ 49. Yet news reports indicate that the truth lies elsewhere.

> While Richman's portfolio included the use of encrypted communications by terror suspects, the sources said Richman also was sent talking points about the FBI's handling of the Hillary Clinton email investigation. Those talking points attempted to compare and contrast Clinton's use of an unsecured personal server exclusively for government business with the case of retired Gen. David Petraeus, who shared classified information with his biographer and mistress Paula Broadwell, as well as the case brought against the late Sandy Berger.

Catherine Herridge, *Comey's memo leak contact had 'special government employee' status at FBI*, FoxNews.com, Apr. 24, 2018, https://fxn.ws/2EsA3Vz. Later reporting backed up these statements.

---

*is James Comey's friend and leaker Daniel Richman?*, ABC News, June 13, 2017, https://abcn.ws/2S80sw2.

[13] Bolinder Decl. ¶ 8.

> While Richman's portfolio included the use of encrypted communications by terror suspects, the sources said he also was sent talking points about the FBI's handling of the Hillary Clinton email investigation.

*DOJ responds to request for info on Comey's law professor friend*, FoxNews.com, May 15, 2018, https://fxn.ws/2S5wc4Y.

Some of the language in the FBI's declaration further confirms that something is rotten in the State of Denmark.

> Plaintiff's FOIA request did not ask for *non-work related communications*, but for all "intra-bureau communications" related to his work assignments and work product.
>
> Plaintiff's broad request (even with the agreed upon slight narrowing of scope) was for *work related communications and work product*, so the FBI's search for responsive records encompasses *the complete work history* of SGE Daniel Richman.

Hardy Decl. ¶¶ 49–50, n.20 (emphasis added). Given the public news reports, and the FBI's too-clever-by-half language concerning "non-work related communications," Plaintiff is left to wonder if there are other records the FBI found that the Bureau is inappropriately construing as outside the "four corners" of the request. The request was clear that it should include all intra-bureau communications "about Mr. Richman *and* his assignments as activities, as well as all work product delivered to Director Comey or to others within the bureau." Compl. ¶ 9 (emphasis added). It is difficult to see how a "non-work related communication," especially if sent or received on an FBI email address, would fall outside of the scope of the request. Furthermore, the Fox News reports indicate that one of Mr. Richman's *assignments* was to advise Mr. Comey on how to handle the Hillary Clinton email issue.

These open questions, and the "wiggle words" used by the FBI in its declaration, are further proof of why this request cannot be delayed any further. The DCNF and its readers, the public,

have a right to know about Mr. Richman's status as an Special Government Employee, especially in light of his ongoing representation of Director Comey in front of Congress.

### III.     Remedy.

Should this Court disagree with the DCNF and grant the FBI's stay motion, Plaintiff respectfully requests that the delay be short and tailored to the needs of this case.  In *Democracy Forward Foundation*, decided December 7, 2018, this district granted a short stay to the DOJ OIP, only until January 13, 2019.  2018 WL 6434769, at *6.  In doing so, the Court issued a warning.

> Upon expiration of the stay, the court will not accept from Defendant an extended schedule to search for and produce responsive records. Ten months have already passed since Plaintiff made its request, which it then narrowed. It would behoove Defendant to take the next six weeks to craft and execute a plan to expeditiously produce the requested records upon expiration of this stay.

*Id*. at *7.  Although the DCNF maintains, as explained above, that these two cases are distinguishable and that no stay is warranted here, the DCNF respectfully requests that any stay in the instant matter be limited to a similarly short period of time, especially as nearly eight months have already passed since the FBI received the request at issue here.

Finally, the DCNF asks this Court to require the FBI, whenever record processing begins, to process *more* than 500 pages per month.  Given the critical media interest in this story, and its relevance to ongoing current events, the DCNF respectfully requests that this Court require the FBI to process the records at a pace of 1,200 pages a month, which will result in approximately a six-month processing time.

## CONCLUSION

The FOIA request at issue in this case is important and of critical media interest. Even more important is the federal government's obligation to promote and practice transparency. The FBI has failed to show that it has encountered any unexpected or unprecedented increase in requests, and its work on reducing its FOIA backlog falls short of the mark. For these reasons, the DCNF

respectfully requests that this Court DENY the FBI's motion and enter an order requiring the FBI to begin processing the records immediately, at a rate of 1,200 pages per month.

Date: December 21, 2018                                   Respectfully submitted,

*/s/ Eric R. Bolinder*
Eric R. Bolinder
D.C. Bar. No. 1028335
Lee A. Steven
D.C. Bar. No. 468543

CAUSE OF ACTION INSTITUTE
1875 Eye Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 499-4232
Facsimile: (202) 330-5842
Eric.bolinder@causeofaction.org
Lee.steven@causeofaction.org

*Counsel for Plaintiff DCNF*