DAILY CALLER NEWS FOUNDATION,
    Plaintiff,

    v.

FEDERAL BUREAU OF
INVESTIGATION,
    Defendant.

Civil Action No. 18-1833 (CKK)

MEMORANDUM
OPINION
(June 7, 2019)

Plaintiff Daily Caller News Foundation ("DCNF") filed suit on August 6, 2018, against Defendant, the Federal Bureau of Investigation ("FBI"), pursuant to the Freedom of Information Act ('FOIA"), 5 US.C. § 552, seeking access to records withheld by Defendant FBI. "relating to FBI Special Government Employee ("SGE") Daniel Richman, including FBI communications with and about him, as well as his relationship with former FBI Director James Comey." Compl., ECF No. 1, at ¶¶ 1-2. Plaintiff alleges that the FBI has failed to comply with the statutory deadlines to respond to Plaintiff's FOIA request.

Presently before the Court are Defendant's [14] Motion for an *Open America* Stay and Memorandum in Support thereof ("Def.'s Mot."), Defendant's [14-1] Declaration of David M. Hardy ("Hardy Decl."); Plaintiff's [15] Opposition to Defendant's Motion ("Pl.'s Opp'n"), Plaintiff's [15-1] Declaration of Eric R. Bolinder ("Bolinder Decl.") and the exhibits thereto; and Defendant's [19] Reply to Plaintiff's Opposition ("Def.'s Reply"). Upon consideration of the pleadings, the relevant legal authorities, and the record as a whole,[1] the Court shall DENY

---

[1] In connection with this Motion, the Court also considered the Plaintiff's Complaint, ECF No. 1; the Defendant's Answer, ECF No. 11; and the Joint Status Report, ECF No. 13. David M. Hardy

Defendant's [14] Motion for an *Open America* Stay.

## I. BACKGROUND

According to the Complaint, DCNF is "a 501(c)(3) non-profit organization that provides original investigative reporting from a team of professional reporters who operate for the public benefit" and provide content that is "available without charge to any eligible news publisher that can provide a large audience." Compl., ECF No. [1], at ¶ 6. On April 25, 2018, DCNF submitted an online FOIA request to the FBI seeking access to "all records, documents, and communications pertaining to Daniel Richman, a Special Government Employee hired by former Director James Comey." Compl, ECF No. 1, at ¶ 8 ; Ex. 1, ECF No. 1-1 (FOIA Request).

By letter dated May 7, 2018, the FBI acknowledged receipt of DCNF's FOIA request, but it did not provide an estimated date of completion or otherwise indicate that the request was being processed. Compl., ECF No. 1, at ¶ 14. Plaintiff filed suit on August 6, 2018. The Complaint alleges, and the FBI does not dispute, that the FBI failed to make any determination regarding DCNF's FOIA request within the twenty-day deadline set by the FOIA. *See* Compl., ECF No. 1, at 3-4; Def.'s Answer, ECF No. 11, at 4.

By letter dated September 17, 2018, the FBI advised Plaintiff that its request to expedite processing had been denied and further, that the FBI had located approximately 11,000 pages of potentially responsive records. Hardy Decl., ECF No. 14-1, at ¶10. In an effort to accelerate the processing of the request by moving it into a small processing queue, the FBI offered DCNF an opportunity to reduce the scope of its request. *Id.* On October 24, 2018, DCNF narrowed

---

is the Section Chief of the FBI Record/Information Dissemination Section ("RIDS", Information Management Division. Eric R. Bolinder is counsel for Cause of Action Institute, and he represents the Plaintiff in this matter.

2

the scope of its request as follows: "All final work product (*i.e.*, memoranda) sent by Daniel Richman to Director Comey or anyone else at the FBI, and all draft versions of any of this work product can be excluded from processing. All other responsive records, such as emails/communications, would still be included as responsive." Hardy Decl., ECF No. 14-1, at ¶ 4. With respect to the narrowed request, the FBI has identified approximately 7,000 pages of potentially responsive records. *Id.*

Upon the filing of the FBI's Answer, the Court ordered the parties to confer and propose a schedule for proceeding in this matter. *See* Order (Oct. 15, 2018), ECF No. 12. Pursuant to that Order, the parties filed a Joint Status Report, whereby the FBI proposed that "due to workload and litigation constraints, it intend[ed] to file a motion for an *Open America* stay," and the parties set out two variations of a briefing schedule. Jt. Status Rpt., ECF No. 13, at 2-3. The Court set a briefing schedule, and Defendant filed its Motion for an *Open America* Stay, requesting a stay of proceedings until December 2020. Defendant's Motion is ripe for resolution by this Court.

## II. LEGAL STANDARD

The Freedom of Information Act, 5 U.S.C. § 552(a)(6)(A), provides in relevant part that upon receipt of a FOIA request, the responding agency must:

> (i) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of (l) such determination and the reasons therefor, . . . [and] (lll) in the case of an adverse determination (aa) the right of such person to appeal to the head of the agency.

5 U.S.C. § 552(a)(6)(A)(i). Section 552(a)(6)(C)(i) provides that if a requesting party files suit following the responding agency's failure to comply with the statutory deadlines, "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due

diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." In *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), the D.C. Circuit found that an agency is entitled to additional time under this "exceptional circumstances" provision when the agency:

> is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests.

*Id.* at 616 (quoting 5 U.S.C. § 552(a)(6)(C)).

Congress subsequently amended the Freedom of Information Act to include two additional factors for the Court to consider in analyzing whether exceptional circumstances exist in a particular case:

> [T]he term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests. Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) ... after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

5 U.S.C. § 552(a)(6)(C)(ii)-(iii). The legislative history of these amendments indicates that Congress intended the amendments to be "consistent with the holding in Open America," and merely sought to "clarify that routine, predictable agency backlogs for FOIA requests do not constitute exceptional circumstances." H.R. Rep. 104–795 at 24 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3448, 3467. *See Elec. Privacy Info. Ctr.*, 933 F. Supp. 2d at 46 (Kollar-Kotelly, J.) ("'[R]outine, predictable agency backlogs for FOIA requests do not constitute exceptional circumstances.'") (citing H.R. Rep. 104-795 at 24 (1996)).

Accordingly, it is not sufficient that an agency receives a high number of FOIA requests or has a large backlog of requests to which it must respond. Instead, an agency must show that the number of requests received in the relevant period was truly unforeseen and remarkable. *See Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 259 n.4 (D.D.C. 2005) ("[a]n agency must show more than a great number of requests to establish [ ] exceptional circumstances under the FOIA").

Courts have routinely held that in addition to the issues outlined in the statute, other circumstances are relevant considerations when faced with a request for an *Open America* stay, including "an agency's efforts to reduce the number of pending requests, the amount of classified material, [and] the size and complexity of other requests processed by the agency." *Elec. Frontier Found. v. Dep't of Justice*, 517 F. Supp. 2d 111, 117 (D.D.C. 2007) (Kollar-Kotelly, J.) "[W]here an agency is making good faith efforts and exercising due diligence in processing requests on a first-in, first-out basis, a stay of proceedings is authorized so long as the agency also demonstrates 'reasonable progress in reducing its backlog of pending requests.'" *Ctr. for Pub. Integrity v. Dep't of State*, Civ. Action No. 05-2313, 2006 WL 1073066, at *2 (D.D.C. Apr. 24, 2006) (citing *Appleton v. FDA*, 254 F. Supp.2d 6, 9-10 & n.4 (D.D.C. 2003); *Wilderness Soc'y v. Dep't of the Interior*, No. Civ. A. 04-0650, 2005 WL 3276256, at *6 (D.D.C. Sept. 12, 2005) (Kollar-Kotelly, J.)).

When considering a request for an *Open America* stay, "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims." *SafeCard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted); *see also Gov't Accountability Project v. U.S. Dep't of Health & Human Servs.*, 568 F. Supp. 2d 55, 59 (D.D.C. 2008) (Kollar-Kotelly, J.)

(same); *Nat'l Sec. Archive v. U.S. Securities and Exchange Commission*, 770 F. Supp. 2d 6, 9 (D.D.C. 2011) (quoting *Elec. Frontier Found. v. DOJ*, 517 F. Supp. 2d at 117 (D.D.C. 2007)).

### III. ANALYSIS

The Freedom of Information Act requires the FBI to make two showings before the Court may grant a stay of the proceedings: (1) that exceptional circumstances exist, and (2) that the FBI is "exercising due diligence" in responding to DCNF's request. 5 U.S.C. § 552(a)(6)(C)(i).

The FBI argues that it satisfies both of these prongs and asks the Court to stay this matter "until December 25, 2020, at which time the FBI will begin processing Plaintiff's FOIA request at a rate of 500 reviewed pages per month." Def.'s Mot., ECF No. 14, at 10. Under the FBI's proposal, processing of the 7,000 documents would be completed at the end of February 2022. In support of its motion requesting a stay, the FBI submits a declaration from David Hardy, the Section Chief at the FBI's Record/Information Dissemination Section, Information Management Division. *See generally* Hardy Decl., ECF No. 14-1.

#### A. Do Exceptional Circumstances Exist?

#### 1. The Number of Requests Received over Time

Defendant relies on the Hardy Declaration to provide additional details in support of the argument that exceptional circumstances exist. The FBI contends that since 2015, it has faced a "spike in [the number of FOIPA] requests submitted to the agency," resulting in a growing backlog in the processing of such requests. Hardy Decl., ECF No. 14-1, at ¶ 12. The FBI points to statistical analysis showing that in fiscal years ("FY") 2011-2015, the FBI received an average of approximately 19,400 requests, but starting in FY 2016, the number of requests grew

18 percent, and in FY 2017, "the growth trend increased at an even more accelerated pace" with an increase of 23 percent over FY 2016, and a subsequent 18 percent rise in FY 2018. Hardy Decl. at ¶ 12.

As a preliminary matter, Plaintiff points out that the FBI relies on a declaration that "limits its discussion to only those requests received by the FBI from FY 2014 to the present" and "lumps together both FOIA and Privacy Act requests." Pl.'s Opp'n, ECF No. 15, at 5. Plaintiff disputes the FBI's claims about its unexpected increase in FOIA claims, noting that "[t]he 'recent surge' in FOIA requests the FBI alleges to have experienced represents the normal and expected increase following the election and inauguration of a new president and the start of a new administration." Pl.'s Opp'n, ECF No. 15, at 3. In contrast, the chart attached by Plaintiff, which runs from 2005-2017, gives a more global picture of the total number of FOIA requests, the number processed and the backlog, and it shows that "the FBI has received fewer FOIA requests during the first two years of the Trump election and Administration than it did under the first two years of the Obama election and Administration," and further, that the "backlog of FOIA requests has only gotten worse." Pl.'s Opp'n , ECF No. 15, at 3; *see* Pl.'s Opp'n at 6 (Table); Bolinder Decl., ECF 15-1, at ¶ 3.

Comparing the requests during the first year of the Obama Administration versus during the first year of the Trump Administration, Plaintiff explains that in the 2008 election year, the FBI received the highest number of requests received in the past decade — 17,241 — which was also 4,732 more than it received the previous year. Pl.'s Opp'n, ECF No. 15, at 5. In contrast, in the 2016 election year, the FBI "received 15,202 requests," which was "2,039 fewer than 2008 and only 2,271 more than the previous year." *Id.* Plaintiff notes further that in 2009, "the FBI received 15,664 FOIA requests, which was over 600 more than the 15,042 received in

2017." *Id.*

Plaintiff disputes the "FBI['s] claim[ ] that '[i]nstead of experiencing the peaks and valleys of incoming requests within a relatively predictable range of annual requests, recent figures demonstrate the FBI's annual volume of requests has broken out to new levels not sustainable with existent resources and technology.'" Pl.'s Opp'n at 6, citing Hardy Decl. at ¶ 21. Plaintiff claims that this contention is "belied by the fact that the FBI processed an average of 15,859 requests in 2008-2010, which exceeds the total number of requests received in each of the years since then," and furthermore, the historical data over the last thirteen years (provided by Plaintiff) shows that the FBI processed "roughly the same number of requests as it received" and "worked to make up the difference" in years where it received more requests, comparing the period 2012-2013 with 2014-2015. Pl.'s Opp'n, ECF No. 15, at 6 (Table), at 7 (Chart); Bolinder Decl. at ¶ 4.

The Court finds that the statistical evidence presented by the parties supports a finding of no exceptional circumstances. While the number of FOIA requests received by the FBI increased from 2015 to 2016, from 12,931 to 15,202, the number held steady at around 15,100 from 2016 to 2017, and this was not as high as the number of requests received during the 2008-2009 time frame, which ranged between 15,664 and 17,241 requests. The statistical evidence cited by the Defendant shows a steady increase in FOIPA requests (about 20 percent annually) from 2016-2018. Accordingly, the increase in the amount of FOIA requests cannot be said to be unforeseen or remarkable.

### 2. Complexity of the Requests

The FBI claims that FOIA requests have "grown significantly more complex" because they "contain numerous and/or multi-faceted subject and often require much more coordination

with external and internal stakeholders to ensure the FBI makes appropriate disclosure decisions." Hardy Decl., ECF No. 13-1, at ¶ 13. Moreover, because FBI records "increasingly contain OGA [other government agency] information equities" —in response to information-sharing arising after September 11, 2001 — the FBI is required to seek the OGA's redaction determination prior to release of information. *Id.* at ¶ 15. Additionally, because the FOIPA requests received are "more sophisticated," the FBI must "seek guidance from FBI personnel . . . with the subject matter expertise needed to make informed, appropriate disclosure decisions." *Id.* at ¶ 16. Likewise, because of the shift from paper and physical records, the FBI "has been forced to also dedicate more of its finite resources on developing its workforce's capability and expertise to process an increasing number of audio and video records." *Id.* at ¶17.

Plaintiff counters the FBI's claims that requests have grown more complex over the last several years by pointing out that "the agency does not provide a date range for this so-called increase in complexity or any evidence, beyond the bald statement, to support the contention." Pl.'s Opp'n, ECF No. 15, at 7. Instead, the Hardy Declaration "list[s] the usual requirements for the processing of FOIA requests that all agencies face: reviewing each document for redactions and consulting with internal stakeholders" where such activities area "the basic elements of processing any FOIA request." *Id.*; *see Elec. Privacy Info. Ctr.*, 933 F. Supp. 2d at 48 (Kollar-Kotelly, J.) (finding "insufficient evidence in the record to draw any concrete and meaningful conclusions as to the composition of the [FBI's] workload today in comparison to years past, at least in terms of complexity.") (internal quotation marks and citation omitted); *see also Clemente*, 71 F. Supp. 3d at 267 (same). In both *Elec. Priv. Info. Ctr.* and *Clemente*, the courts found that the FBI could not satisfy the exceptional circumstances test applicable to a request for an *Open America* stay and had not adequately reduced the backlog of outstanding

FOIA requests.

Plaintiff sheds doubt similarly on the FBI's claim that it is overly burdened by the need for greater "inter-agency information sharing" resulting from the September 11, 2001 terrorist attacks. Pl.'s Opp'n, ECF No. 15, at 8. Plaintiff surmises that '[t]he FBI must long ago have adapted to the policy and technology reforms that followed 9/11 and can no longer plead that excuse to avoid transparency almost two decades later" nor has the FBI claimed that the request at issue here "implicates national security interests or would require extra-sensitive review of inter-agency consultation." *Id*. Furthermore, Plaintiff notes that "the FBI['s] claim[ ] that advances in technology have made FOIA request more difficult to process, not less" is not backed by any supporting evidence that such changes are "anything other than the natural evolution . . . from paper to digital recordkeeping." *Id.* Moreover, there is no explanation why the FBI could "handle the higher volume of requests in the Obama years, but now finds itself unable to do so . . . " particularly when the staffing has increased from 187 employees processing 17,717 FOIA requests in 2008 to 252 employees processing 15,611 requests in 2017. Pl.'s Opp'n, ECF No. 15, at 8-9. Plaintiff notes that the FBI increased its staffing between 2008-2012, but then as the new election cycle approached, it "appears the FBI has decided to cut the number of employees, rather than staff up." Pl.'s Opp'n, ECF No. 15, at 9 (Table).

The Court finds that overall, the number of requests the FBI receives on an annual basis has decreased since it peaked in 2008. While the FBI claims that the requests now being processed are more complex and further, that technological advances have made it more difficult to complete the processing, the FBI provides no evidence to support these claims other than anecdotal evidence, and accordingly, there is not enough information from which the Court could conclude that the overall complexity of the FBI's workload has increased over time or

10

that technological advances have slowed the process.

### 3. Pending FOIA Litigation

The FBI contends that, "over the last five years the number of pending FOIPA litigations has unpredictably increased to all-time program highs, from 160 in FY 2014 to 292 in 2018." Hardy Decl., ECF No. 14-1, at ¶¶ 18-21. The FBI notes that "FOIPA litigation draws upon a disproportionate share of the agency's processing resources when compared to traditional, administrative FOIPA requests." Def.'s Mot., ECF No. 14, at 7; *see* Hardy Decl. at ¶ 20.

Plaintiff argues that although the FBI cites its current FOIA litigation load as a justification for its failure to timely process Plaintiff's FOIA request, the FBI cites selectively to statistics from 2014-present, which show a "steady" and "completely predictable" increase over the past five years, instead of putting it in perspective over a longer period of time. Pl.'s Opp'n, EF No. 15, at 10. *See Clemente*, 71 F. Supp. 3d at 267 (finding that "anecdotal evidence" does not show the FBI's "workload as it has developed over time" and noting that the Court could not conclude that obligations arising from the [FOIA] lawsuits were "more than the predictable workload of the agency"); *see also Elec. Privacy Info. Ctr.*, 933 F. Supp. 2d at 48 ("[W]ithout more elaboration as to the FBI's litigation-related processing obligations over specific periods of time, the Court cannot determine what, if any, impact these obligations should have on the Court's analysis of the FBI's FOIA workload.")

The Court finds that the FBI's involvement in other litigation regarding FOIA requests indicates that the number of cases being litigated has increased at a steady rate, which shows that the FBI is dealing with a predictable workload, and this does not weigh in favor of granting an *Open America* stay.

### 4. FOIA Backlog

The Hardy Declaration does not specifically address steps taken by the FBI to alleviate any backlog of FOIA requests nor does it indicate how denying a stay might affect others in the que of front of Plaintiff's request. The Declaration focuses instead on the general manner in which the FBI processes FOIA requests, the structure of RIDS, and technological improvements. The Declaration mentions that RIDS is currently engaging in an "aggressive hiring program" designed to "keep up with constant personnel turnover," with the proviso that "it takes years to fully develop a FOIA analyst." Hardy Decl., ECF No. 14-1, at ¶¶ 37-39.

Plaintiff notes that the backlog of FOIA requests significantly increased from 2015 (around 2,600) to 2016-2017 (hovering around 4,400) from where it was during 2008-2010 (around 1,450), even though the number of FOIA requests was highest in 2008-2009, and the number of FOIA requests was comparable in 2016-2017 to the number in 2010. *See* Pl.'s Opp'n at 6 (Table). Plaintiff includes a Chart in its Opposition titled "FBI Backlog Against Number of Requests" and observes that while "the FBI absorbed the significant increase in FOIA requests in 2008-2010 without carrying a significant backlog," the FBI has failed to respond to the "steady increase in the number of FOIA requests over the last six years" or to address the "bump" at the onset of the new administration, and therefore, the backlog has grown. Pl.'s Opp'n, ECF No. 15, at 12 (Chart). Plaintiff contends that the FBI has not done enough to control or reduce its backlog with regard to FOIA processing generally or this case specifically, where "the only backlog reduction noted in the FBI's declaration is that, through negotiation, it reduced the number of pages to be processed." Pl.'s Opp'n, ECF No. 15, at 12. Plaintiff relies on *Clemente*, 71 F. Supp. 3d at 268 and *Elec. Info. Privacy Ctr.*, 933 F. Supp. 2d at 49, for the proposition that the Defendant's *Open America* stay should be denied on grounds that the FBI

has not done enough to control or reduce its backlog of FOIA requests. Plaintiff distinguishes *Democracy Forward Found. v. Dep't of Justice*, No. 18-00734, 2018 WL 6434769 (D.D.C. Dec. 7, 2018), where an *Open America* stay was granted because there, "the DOJ OIP demonstrated that the number of FOIA requests it received increased at a 'steady pace' from '904 in FY 2008 to 1803 in FY 2016' but then showed a substantial, unprecedented spike from 2016-2019 from 1,803 to 2,818, a nearly 34% increase." Pl.'s Opp'n, ECF No. 15, at 13.

Analyzing the date provided by Plaintiff, the Court finds that the FBI has not made reasonable progress in reducing its backlog of FOIA requests. During 2008 and 2009, the FBI was processing around 16,400 requests each year, similar to the approximately 15,600 requests processed in 2017; however, the backlog was around 1,400 requests in 2008-2009, while it stands at around 4,400 requests in both 2016 and 2017. Furthermore, while the number of requests processed in 2016 was approximately 13,750, which was on par with 2015, the backlog jumped from approximately 2,600 in 2015 to 4,300 in 2016.

With regard to any affirmative steps taken by the FBI in this case to reduce its FOIA backlog, the FBI did effectively encourage Plaintiff to modify its request with a resulting reduction from 11,000 to 7,000 regarding the number of potentially responsive pages. The FBI mentioned that it is engaged currently in an "aggressive hiring program" to try to keep up with "constant personnel turnover," and it has secured additional funding recently to hire more contract personnel; however, the FBI concedes that it "takes years to fully develop a FOIA analyst" and thus, the "increase in production from these contractors will likely be incremental." Hardy Decl., ECF 14-1, ¶¶ 37-39 & n.19. The Court finds that the FBI has not demonstrated that it has addressed its FOIA backlog in a meaningful and timely fashion so as to warrant an *Open America* stay.

13

## IV. CONCLUSION

Upon review of the parties' submissions, the Court finds that the FBI has not shown exceptional circumstances or made sufficient progress in reducing its backlog to warrant an *Open America* stay.[2] Having determined that a stay is not appropriate, this Court must now decide whether to grant Plaintiff's request that the FBI to process 1,200 pages per month instead of applying the FBI's usual processing rate of 500 pages per month because of Plaintiff's allegations of "critical media interest in this story[ ] and its relevance to ongoing current events[.]" Pl.'s Opp'n, ECF No. 15, at 19. Defendant argues that this "unsupported" request for 1,200 pages a month is contrary to the "500 pages per month set forth in the FBI's policy and typically ordered by this Court." Def.'s Reply, ECF No. 19, at 3; *see, e.g., Nat'l Sec. Counselors v. U.S. DOJ*, 848 F.3d 467, 471-72 (D.C. Cir. 2017) (recognizing that the FBI's 500-page-per-month policy "serves to promote efficient responses to a larger number of requesters'); *Freedom Watch v. Bureau of Land Mgmt.*, 325 F. Supp. 3d 139, 142 (D.D.C. Sept. 25, 2018) (Kollar-Kotelly, J.) (upholding the FBI's interim release policy of 500 pages per month despite the fact that processing of plaintiff's FOIA request would take approximately 500 months); *see also* Hardy Decl., ECF No. 14-1 at ¶¶ 31-36 (explaining the rationale and justification for the FBI' interim release policy). The FBI has indicated that there are 7,000 potentially responsive documents to Plaintiff's modified request. This Court finds no reason in this case to vary from the FBI's policy of processing 500 pages per month, which will result in a processing schedule spanning 14 months from June 2019 through August 2020. Because it is unclear what types of documents fall within the 7,000 pages, the Court directs that the FBI

---

[2] In light of this ruling, this Court need not address Plaintiff's allegations that it should have received expedited processing of its request.

categorize the documents so that Plaintiffs can establish an order for production in which public documents are produced last. Production should be made on a rolling basis.

In the parties' [13] Joint Status Report, they noted that they did not have a view on the necessity of a Vaughn Index, as the *Open America* request needed to be resolved before the parties could set a production schedule. Accordingly, the parties shall provide this Court with a Status Report by no later than June 28, 2019, setting forth a production schedule and a deadline for completion of all production, and indicating the parties' positions on a Vaughn Index.

For the foregoing reasons, the Court shall DENY Defendant's [14] Motion for an *Open America* Stay. An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE